# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donisha Simmons,           :
        Petitioner      :
                       :   No. 361 C.D. 2025
        v.           :
                       :   Submitted: June 16, 2026
Unemployment Compensation Board of : 
Review,                  :
        Respondent    :

BEFORE:   HONORABLE LORI A. DUMAS, Judge
              HONORABLE STELLA M. TSAI, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

### *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                              **FILED: July 23, 2026**

Donisha Simmons (Petitioner) has petitioned this Court to review the adjudication of the Unemployment Compensation Board of Review (Board), issued February 19, 2025, which affirmed a Referee's decision that Petitioner was ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (UC Law) relating to willful misconduct.[1] Upon review, we affirm.

---

[1] Section 402(e) of the UC Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (providing that an employee shall be ineligible for compensation when her separation from employment is due to willful misconduct connected with her work).

# I. BACKGROUND[2]

Petitioner worked as a full-time prebilling specialist for Erb Management Services (Employer) from October 2023 until July 2024. Employer maintained a workplace-conduct policy prohibiting fighting or threatening behavior, where a single violation could result in termination of employment.

In July 2024, Petitioner assisted a co-worker with a computer-related issue and remarked that another employee, Kaci,[3] had caused the problem. Kaci overheard the comment and immediately confronted Petitioner. Kaci suggested that they bring the dispute to management's attention, and, in response, Petitioner told Kaci something to the effect of "get out of my space." *See* Referee's Decision, 1/21/25, Findings of Fact (F.F.) ¶8.

At that point, a co-worker (Gifford) present for the quarrel believed the dispute might escalate and sought the manager's attention. Kaci proceeded to find the manager (Hartman) in a separate work area, and Petitioner followed. Both employees were yelling at each other and using profanity. The manager intervened, ordered the parties to stop, and Petitioner returned to her workspace. Later that day, Employer terminated both Petitioner and Kaci for their participation in the exchange.

Petitioner subsequently applied for UC benefits, which the UC Service Center denied. Petitioner timely appealed to a Referee, who held a hearing at which Petitioner, Hartman, Gifford, and Employer's human resources representative (Greer) testified. The Referee affirmed, finding that Petitioner had committed

---

[2] Unless stated otherwise, we adopt this background from the Board's decision and order, which adopted and incorporated the Referee's findings and conclusions. *See* Bd.'s Decision & Order, 2/19/25; *see also* Referee's Decision, 1/21/25. The transcript of the Referee's hearing identifies three witnesses for Employer: Chelsea Hartman, a manager; Jill Gifford, Petitioner's co-worker; and Cherryl Greer, a human resources representative. *See* Hr'g Tr., 1/17/25, at 1-3.

[3] The Referee refers to this employee as "Casey." *See* Referee's Decision. However, the rest of the record identifies her as "Kaci." *See generally* Agency Record.

willful misconduct.  Petitioner timely appealed to the Board, which affirmed. Petitioner then requested reconsideration, which the Board denied.  *See* Bd.'s Order, 2/26/25.  Thereafter, Petitioner timely petitioned this Court for review.  *See* Pet., 3/20/25.

## II. ISSUES

Essentially, Petitioner has raised three issues for our review, which we have reordered and rephrased as follows.[4]  First, according to Petitioner, several of the Board's factual findings are inconsistent or unsupported by the record.  *See* Pet'r's Br. at 7.  Second, Petitioner asserts that Employer failed to meet its burden of proving willful misconduct.  *See id.* at 5-6.  Third, she maintains that, even if she committed willful misconduct, her conduct was justified and excusable under the circumstances.  *See id.* at 5-7.

## III. DISCUSSION[5]

Petitioner first challenges several of the Board's findings.  *See* Pet'r's Br. at 7.  Specifically, she asserts: (1) the Board credited testimony that profanity was used without addressing her claim that she used it only once; (2) the Board

---

[4] Petitioner has identified five issues for our review.  *See* Pet'r's Br. at 1.  In her argument section, however, Petitioner reorganizes these matters into four headings, and advances additional assertions not expressly included in her initial statement of issues presented.  *See id.* at 5-7.  The Pennsylvania Rules of Appellate Procedure prescribe a mandatory brief format for lawyers and non-lawyers alike.  *Richardson v. Pa. Ins. Dep't*, 54 A.3d 420, 425 (Pa. Cmwlth. 2021).  Rule 2119 provides that an "argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."  Pa.R.A.P. 2119(a).  We caution Petitioner that a party's failure to adhere to Rule 2119 and properly develop an argument may result in waiver.  *City of Phila. v. Workers' Comp. Appeal Bd. (Calderazzo)*, 968 A.2d 841, 846 n.4 (Pa. Cmwlth. 2009).

[5] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated."  *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022).

credited Hartman's concerns about escalation despite testimony that the exchange subsided without a physical altercation; and (3) the Board failed to credit Petitioner's remark, "get out of my space," as an attempt to deescalate the encounter. *See id.* According to Petitioner, these findings lack the required "internal consistency and corroboration." *Id.* (citing in support *Commonwealth v. DeJesus*, 860 A.2d 102 (Pa. 2004)).

It is well established that the Board is the ultimate factfinder, entitled to make its own determinations on evidentiary weight and witness credibility, and is free to accept or reject the testimony of any witness, in whole or in part. *See Cambria Cnty. Transit Auth. v. Unemployment Comp. Bd. of Rev.* (*CCTA*), 201 A.3d 941, 947 (Pa. Cmwlth. 2019). Further, the Board's credibility determinations are not subject to judicial review provided they are based on substantial evidence, even if there is contrary evidence of record. *See Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a finding. *See Pierce-Boyce*, 289 A.3d at 136.

Petitioner's reliance on *DeJesus* is misplaced. In that case, our Supreme Court resolved inconsistencies in the testimony offered by two eyewitnesses who had identified the appellant as the shooter at the appellant's criminal trial. *DeJesus*, 860 A.2d at 107. Recognizing that their testimony differed as to certain minor details, *e.g.*, from where they had witnessed a murder, the Court nonetheless reasoned that their testimony was "consistent as to the crucial events surrounding the shooting itself . . . ." *Id.* (noting that both eyewitnesses testified that the "appellant shot [the victim] multiple times after a brief argument and a physical altercation during which [the victim] had pleaded in vain for mercy"). Thus, "the

4

jury was free to weigh and reject the questions [the appellant's] trial counsel raised concerning the eyewitnesses' credibility." *Id.*

Here, Petitioner has not identified inconsistencies in the testimony offered by the Employer's witnesses, nor do we discern any contradictions so substantial as to render any findings by the Board pure conjecture. *Cf. DeJesus.* Rather, Petitioner has merely asked this Court to reweigh the Board's findings in her favor. *See* Pet'r's Br. at 7. We decline to do so, as substantial evidence supports the Board's findings. *See Henderson*, 77 A.3d at 718.

For example, the Board acknowledged Petitioner's assertion that she used profanity only once, *see* Referee's Decision at 3, but credited testimony from Employer's witnesses that both Petitioner and Kaci peppered their exchange with profanity. *Compare* Referee's Decision, F.F. ¶13 ("Both parties were yelling at each other, and each was using profanity."), *with* Hr'g Tr., 1/17/25, at 12 ("curses were being thrown around"). The Board was also free to reject Petitioner's assertion that there was no risk of violence and instead relied on testimony from Gifford and Hartman that the confrontation escalated to the point that the two appeared to be "stepping towards each other" and were "in each other's faces," and that the situation could "a hundred percent" become physical. Hr'g Tr. at 7-8, 17. Finally, the Board reasonably rejected Petitioner's characterization of her "get out of my space" comment, which Petitioner admitted occurred amidst the ongoing confrontation and just after Kaci had suggested involving management. *Id.* at 22-23.

For these reasons, Petitioner's first issue lacks merit. *See Henderson*, 77 A.3d at 718.

Next, Petitioner asserts that Employer failed to establish her willful misconduct. *See* Pet'r's Br. at 5-7. The term "willful misconduct" is not defined by

statute, but this Court has defined it as: "(1) an act of wanton and willful disregard of an employer's interests; (2) a deliberate violation of rules; (3) a disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations." *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017). This Court has long held that "whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Id.* (quoting *Brown v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012)).

The burden of proving willful misconduct rests with the employer. *See Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). Where the employer asserts willful misconduct based on the violation of a work rule, the employer must show (1) the existence of the policy, (2) the reasonableness of the policy, and (3) its violation by the employee. *See Halloran v. Unemployment Comp. Bd. of Rev.*, 188 A.3d 592, 597 (Pa. Cmwlth. 2018). The employer must additionally prove that the employee was aware of the policy. *See id*. at 599.

Here, Petitioner challenges the existence of Employer's policy.[6] *See* Pet'r's Br. at 6. Noting Employer's failure to introduce its written policy into evidence, Petitioner argues that "[t]his evidentiary gap is critical." *Id.* In her view, absent written documentation confirming the existence of the policy, Employer cannot establish willful misconduct. *See id.* The Board counters that Employer established its policy through competent testimony. *See* Resp't's Br. at 7-9.

It is well settled that an employer can establish a company rule or policy with testimony alone. *Fera v. Unemployment Bd. of Comp. Rev.*, 407 A.2d 942, 944

---

[6] Petitioner does not challenge the policy's reasonableness, her violation of the policy, or her awareness of the policy. *See generally* Pet'r's Br.

6

(Pa. Cmwlth. 1979); *see also Graham v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1054, 1057 (Pa. Cmwlth. 2004) ("[A]n employer may deal with its employees on a non-written basis and expect its directives to be followed."). Therefore, an employer need not introduce a written version of its workplace policy when unchallenged testimony establishes its existence.[7] *See Fera*, 407 A.2d at 944-45; *R. W-M. v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1817 C.D. 2017, filed Jan. 9, 2019), slip op. at 8-10, 2019 WL 137765, at *4-5 (holding that credible testimony can establish a policy's existence even without producing the written document); *Suhr v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 645 C.D. 2013, filed Nov. 1, 2013), slip op. at 5, 2013 WL 5918160, at *2 ("[T]his Court has held that evidence in the form of testimony regarding a written company policy provides substantial evidence for the existence of that policy.").[8]

Here, Hartman and Greer each testified without objection that Employer maintained a zero-tolerance policy prohibiting in-office altercations. *See* Hr'g Tr. at 9, 11. Greer also testified that Petitioner had "signed off" on this policy, *see id.* at 11, and Petitioner acknowledged a zero-tolerance rule, stating, "yes, we did have something that we had to sign to say things were no tolerance." *Id.* at 12. The Board was entitled to rely on this testimony. *See Fera*, 407 A.2d at 944-45.

---

[7] Rule 1002 of the Pennsylvania Rules of Evidence, often referred to as the "Best Evidence Rule," generally requires the original writing, recording, or photograph admitted into evidence when a party seeks to prove its contents. *See* Pa.R.E. 1002. However, this Court has previously recognized that the Best Evidence Rule "is a technical rule of evidence not generally applicable to administrative proceedings." *DiLucente Corp. v. Pa. Prevailing Wage Appeals Bd.*, 692 A.2d 295, 298 (Pa. Cmwlth. 1997). Consistent with that principle, the Best Evidence Rule does not apply to unemployment compensation cases. *See Fera*, 407 A.2d at 944-945; *Wilshire v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1765 C.D. 2013, filed Apr. 30, 2014), slip op. at 6-7, 2014 WL 1759578, at *3.

[8] We may cite unpublished decisions of this Court for their persuasive value. 210 Pa. Code § 69.414(a).

Accordingly, substantial evidence supports the Board's finding that Employer had a zero-tolerance workplace conduct policy. *See id.*

Petitioner next argues that Employer presented no evidence of "prior enforcements or disciplinary precedent" to support the policy's existence. Pet'r's Br. at 6. According to Petitioner, Employer's failure to enforce its policy consistently "undermines . . . [its] credibility and may negate a finding of willful misconduct." *See id.* (citing *Caterpillar, Inc. v. Unemployment Comp. Bd. of Rev.*, 703 A.2d 452 (Pa. 1997)). In response, the Board maintains that the record reflects consistent enforcement insofar as Employer discharged both employees involved in the altercation. *See* Resp't's Br. at 15-16.

If an employer tolerates violations of its policy, it may fail to establish willful misconduct based on a violation of that rule. *See Gordon Terminal Serv. Co. v. Unemployment Comp Bd. of Rev.*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019); *Great Valley Publ'g v. Unemployment Comp. Bd. of Rev.*, 136 A.3d 532, 537 (Pa. Cmwlth. 2016). "[I]nconsistent enforcement occurs where an employer enforces a rule so inconsistently that it no longer appears to be a rule that employees must follow." *Gordon Terminal Serv. Co.*, 211 A.3d at 900 (rejecting an employer's claim that the employee had violated a cell phone policy where credible evidence established that it was common practice for employees to watch sporting events and other things on their cell phones).

Here, Petitioner has identified no legal authority that requires an employer to produce a history of disciplinary actions to establish the existence of a work policy. *See* Pet'r's Br. at 6. Further, her reliance on *Caterpillar* is not persuasive because the relevant inquiry in that case was quite different than the question presented herein. In *Caterpillar*, several claimants were terminated for

8

violating a company policy prohibiting personal attacks against other employees. 703 A.2d at 456-58. Our Supreme Court determined that the policy had not been *reasonably* enforced against the claimants under the circumstances.[9] *See id.* In contrast, the proper inquiry here is whether Employer *consistently* enforced its policy. *See Gordon Terminal Serv. Co.*, 211 A.3d at 899.

Petitioner has asserted inconsistent enforcement, but the only evidence to support this claim is her own self-serving testimony that "curs[ing] and yelling . . . happened all the time." Hr'g Tr. at 12. Greer expressly refuted this claim, explaining that the only prior instance of profanity had occurred in a casual conversation, had not involved hostility toward a co-worker, and had resulted in reprimand. *Id.* at 12-14. Additionally, Hartman testified that both participants in the exchange, Petitioner and Kaci, had been discharged following the incident. *Id.* at 7, 9. Based on this testimony, the record contains no indication of inconsistent enforcement. *Cf. Gordon Terminal Serv. Co.*, 211 A.3d at 899-900. Thus, we discern no error in the Board's conclusion that Employer established Petitioner's willful misconduct. *See Halloran*, 188 A.3d at 597.

Finally, although she does not expressly assert good cause, Petitioner suggests that her conduct was "reactive." *See* Pet'r's Br. at 7 (asserting that she was "assisting a co-worker when Kaci confronted her"). According to Petitioner, the incident was brief, she did not threaten violence, and her "profane outburst was provoked and isolated." *Id.* at 6-7 (citing *Kowal v. Unemployment Comp. Bd. of*

---

[9] The circumstances are not relevant here. Essentially, during an ongoing labor dispute, certain employees wore t-shirts deemed critical of the company's chairman. *Caterpillar*, 703 A.2d at 455. The Supreme Court reasoned that this "was protected union activity," was "not offensive, vulgar, or threatening towards [the chairman]," and the prohibition of these t-shirts would "not reasonably achieve [the company's] goal of avoiding in-plant confrontations." *Id.* at 457, 458.

*Rev.*, 512 A.2d 812 (Pa. Cmwlth. 1986) and *Nehi Bottling Co. v. Unemployment Comp. Bd. of Rev.*, 366 A.2d 594 (Pa. Cmwlth. 1976)).

Once an employer establishes willful misconduct, the burden shifts to the employee, who must prove that she had good cause for her conduct. *Halloran*, 188 A.3d at 597. Good cause exists where the employee's actions are "justified or reasonable under the circumstances." *Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

In the context of verbal confrontations, this Court has found good cause when the employee has been provoked by conduct that is deliberately inflammatory or intentionally deceptive. *See, e.g.*, *Perez v. Unemployment Comp. Bd. of Rev.*, 736 A.2d 737 (Pa. Cmwlth. 1999) (pushing co-worker after an orchestrated attempt to enrage claimant); *Kowal*, 512 A.2d at 813-14 (cursing and throwing a tablet after supervisor's lengthy beratement); *Nehi Bottling Co.*, 366 A.2d at 595-96 (threatening co-worker after the co-worker harassed and lied to the claimant). However, an employee's anger or frustration during an ordinary verbal disagreement does not justify violating a work policy and cannot constitute good cause. *See Browning-Ferris Indus. of Pa.*, *Inc. v. Com., Unemployment Comp. Bd. of Rev.* (*Browning-Ferris*), 501 A.2d 711, 712 (Pa. Cmwlth. 1985) (rejecting a referee's reasoning that the use of vile and abusive language by a truck driver was neither abnormal nor unexpected).

Claimant first relies on *Kowal* to suggest her outburst was justified. *See* Pet'r's Br. at 6-7. In *Kowal*, the claimant and two co-workers endured a supervisor's aggressive criticism for approximately 45 minutes during a disciplinary meeting. 512 A.2d at 813-14. Thereafter, the supervisor targeted claimant individually and repeatedly shouted at her. *See id.* Ultimately, she responded by throwing a writing

10

tablet and cursing at the supervisor before exiting the room. *See id.* The Board denied the claimant benefits, but, on further review, this Court reversed, concluding that claimant's reaction was a reasonable response to intense provocation. *See id.* at 814.

The circumstances in *Kowal* are distinguishable from the present matter. Here, the initial exchange between Petitioner and Kaci reflects an ordinary disagreement between co-workers rather than the prolonged and targeted criticism from a superior. *See* Hr'g Tr. at 8, 15-16. This Court has consistently held that disputes, such as the one between Petitioner and Kaci, cannot justify violating an employer's policy. *See, e.g.*, *Browning-Ferris*, 501 A.2d at 712 ("[T]he mere fact that the use of vulgar language may be expected during an argument does not excuse [a] [c]laimant's conduct.").

Petitioner also relies on *Nehi Bottling*, but that case is likewise distinguishable. *See* Pet'r's Br. at 6-7. In *Nehi Bottling*, the claimant threatened a co-worker, but only after this co-worker had repeatedly badgered him and, on the last day of the claimant's employment, falsely told him that he had been fired. 366 A.2d at 595-96. The Board granted the claimant benefits, and this Court agreed, reasoning that the findings of fact revealed "concerted efforts of harassment," such that "the claimant's threat was excusable in view of the provocation and therefore did not constitute 'willful misconduct[.]'" *Id.* at 595, 596.

Here, unlike in *Nehi Bottling*, there is no evidence that Petitioner was targeted for harassment or otherwise provoked. *See generally* Hr'g Tr. To the contrary, Petitioner's own testimony suggests that it was her off-hand remark critical of Kaci's work that precipitated this incident. Hr'g Tr. at 22 (testifying that, as Kaci walked away from Petitioner's desk, Petitioner told Gifford that "technically,

11

[Kaci's] the reason why the notes are locked"). Additionally, unlike the claimant in *Nehi Bottling*, Petitioner's conduct cannot be described as an isolated outburst. Petitioner actively engaged in a heated verbal dispute and angrily used profanity, and her colleagues feared the incident could escalate into a physical altercation. *See id.* at 16-17.

Based on this evidence of record, Petitioner was not provoked. Thus, she failed to demonstrate good cause for her conduct. *See Browning-Ferris*, 501 A.2d at 712; *cf. Kowal*, 512 A.2d at 813-14; *Nehi Bottling*, 366 A.2d at 595-96.

## IV. CONCLUSION

In this case, the Board's findings are supported by substantial evidence, and we discern no contradictions in the evidence presented by Employer so substantial as to render those findings pure conjecture. *CCTA*; *Henderson*; *cf. DeJesus*. Based on these findings, including that Employer maintained and consistently enforced a work policy prohibiting fighting or threatening behavior, Petitioner committed willful misconduct. *Halloran*; *Fera*; *Gordon Terminal Serv. Co.*. Finally, Petitioner was not provoked and, therefore, failed to establish good cause for her actions. *Browning-Ferris*; *cf. Kowal*; *Nehi Bottling*. For these reasons, we affirm the Board's decision.

 

**LORI A. DUMAS, Judge**

12

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Donisha Simmons, :
            Petitioner :
             : No. 361 C.D. 2025
            v. :
             :
Unemployment Compensation Board of :
Review, :
            Respondent :

# **O R D E R**

AND NOW, this 23rd day of July, 2026, the order of the Unemployment Compensation Board of Review, entered February 19, 2025, is AFFIRMED.

 

**LORI A. DUMAS, Judge**